# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1701

_____

Robert Ray Chism,

        Appellant,

v.

CNH America LLC, formerly known as New Holland North America, Inc.,

        Appellee.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States District Court for the Eastern District of Arkansas.

_____

Submitted: December 14, 2010
Filed: April 29, 2011

_____

Before RILEY, Chief Judge, BEAM and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

Robert Chism brought this products liability lawsuit against CNH America LLC (CNH). A jury found in favor of CNH. Chism appeals, challenging various evidentiary rulings made by the district court.[1] We affirm.

_____

[1] The Honorable J. Thomas Ray, United States Magistrate Judge for the Eastern District of Arkansas, presiding by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.    BACKGROUND

### A.    Facts

In August 2007, Chism's left arm was amputated below his elbow as the result of a farming accident on a 1998 New Holland Model 648 hay baler.[2]  The baler has a power take off (PTO) that transmits power from the tractor to the baler.  At the front of the baler is a platform above the twine box[3] on which a person can stand by using a built-in step and handle.

On the day of the accident, Chism noticed hay "flopping around" on top of the baler.  Chism stood on the platform and reached for the hay while the baler was running.  Chism's left arm became entangled in the baler's machinery between the rollers and the belt (the pinch point), and he was unable to free himself.  Approximately 45 minutes later, Chism's employee, Arthur Adams, found Chism and helped free him from the baler.  Chism's arm was irreparably damaged in the accident.

### B.    Procedural History

The case was tried to a jury in March 2010.  At trial, Chism argued that CNH failed adequately to guard the baler's pinch point or adequately warn of the pinch point's danger pursuant to industry standards.  CNH asserted the baler's design and warnings were adequate because Chism's injury could not have occurred had he properly operated the baler. CNH contended the baler's operating instructions warned against accessing the moving parts while the PTO was on and the baler was running.  CNH also argued the pinch point was "guarded by location" in compliance with industry standards because it was impossible to access the pinch point inadvertently while properly operating the baler.  At the conclusion of a six-day trial, the jury

---

[2]CNH assumed liability for the baler when CNH was formed through the merger of New Holland and Case Corporation in 1999.

[3]The twine box contains the twine used to tie the bales of hay.

returned a verdict in favor of CNH. Chism appeals the jury verdict, challenging six of the district court's evidentiary rulings.

## II.    DISCUSSION

### A.    Standard of Review

We generally review evidentiary rulings "for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." United States v. Summage, 575 F.3d 864, 877 (8th Cir. 2009) (quoting United States v. Two Shields, 497 F.3d 789, 792 (8th Cir. 2007)) (internal quotations omitted). We review for plain error when the party fails to make a timely objection. See United States v. Farrell, 563 F.3d 364, 377 (8th Cir. 2009). Under plain error review, we will only reverse where the error was plain, affected the party's substantial rights, and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

### B.    Evidentiary Rulings Related to Other Incidents
### 1.    Admission of Defense Verdicts in Other Cases

Chism primarily challenges the admission of evidence of two jury verdicts favorable to CNH in other cases involving incidents substantially similar to Chism's accident. The context of the district court's decision to admit this evidence is important in resolving this issue.

Before trial, Chism moved to exclude the jury verdicts, and the district court initially denied the motion. The district court at that time concluded "it would be fundamentally unfair" to allow Chism to introduce evidence that the other incidents occurred without allowing CNH to tell the jury that previous juries determined the balers were not defective. One month later, the court revisited the issue and decided to exclude the verdicts conditionally under Fed. R. Evid. 403, reasoning the other jury verdicts had limited probative value and were inherently prejudicial because the current jury might improperly decide in favor of CNH solely because prior juries reached that

conclusion. The district court warned Chism the verdicts would become admissible if the evidence or argument would permit the jury to infer the individuals involved in the accidents sued CNH. The district court repeatedly emphasized Chism could *only* reference the farmers were bailing hay, climbed on the twine box to remove material, had their arms entangled in the pinch point, and CNH learned of the incidents. The district court warned, if the jury could infer CNH

> knew these kinds of incidents were occurring, [CNH] knew farmers were claiming their equipment was defective, and then in the face of that, [CNH] did nothing about it, at that point, [CNH] would be entitled to say to the jury: Yeah, that's true, but . . . the reason we didn't do anything about it was because in both of those cases, we got a defense verdict. And as a result of that, we felt as if our design was vindicated.

During Chism's opening statement, one of Chism's themes was that CNH "did nothing" to improve the design of the baler or provide better warnings after becoming aware of the danger. Chism explained what happened in both of the similar incidents and stressed that despite CNH becoming aware of these accidents, CNH "did nothing."

The court recessed and CNH argued Chism's opening statement violated the district court's pretrial order. The district court agreed, expressing surprise at Chism's opening statement and concern about the impression created, noting that after Chism described the accidents, Chism "in an emotional kind of way, said that [CNH] did nothing" and so "it would be fundamentally unfair to [CNH] to let [the] jury now, with the knowledge of those other two incidents, not hear the rest of the story about why [CNH] didn't do anything." The district court therefore allowed CNH "to let the jury know that . . . those cases went to litigation and the juries in both those cases returned verdicts in favor of [CNH]."

Chism contends the district court's decision to admit this evidence violated Fed. R. Evid. 403 because any possible probative value was "substantially outweighed by

-4-

the resulting unfair prejudice, confusion of the issues, and misleading of the jury." "The trial court has broad discretion in determining the relevancy and admissibility of evidence" and "[u]nder Rule 403, great deference is given to a district court's balancing of the relative value of a piece of evidence and its prejudicial effect." United States v. Zierke, 618 F.3d 755, 759 (8th Cir. 2010) (quoting United States v. Jiminez, 487 F.3d 1140, 1145 (8th Cir. 2007)) (internal quotation marks omitted).

The previous jury verdicts lacked probative value, Chism maintains, because "a jury verdict does not constitute evidence," but rather "simply represents findings of fact, based on the evidence presented to [that particular jury]." Anderson v. Genuine Parts Co., 128 F.3d 1267, 1272 (8th Cir. 1997). Because it is impossible to know why the juries in prior cases reached the conclusions they did, Chism claims the verdicts lack probative value.

The district court did not abuse its discretion. Although undoubtedly prejudicial, prior jury verdicts are not categorically inadmissible. See Hale v. Firestone Tire & Rubber Co., 820 F.2d 928, 935 (8th Cir. 1987) (noting we were "inclined to admit" evidence of the disposition of similar incidents, including four verdicts, and instructing the district court to admit such evidence in the event of a retrial). By violating the district court's clearly articulated pretrial warning, Chism's opening statements and theme increased the probative value of the verdicts. See Wright v. Ark. & Mo. R.R., 574 F.3d 612, 619 (8th Cir. 2009) (finding no abuse of discretion in admitting otherwise inadmissible evidence where the plaintiff "open[ed] the door" by creating a false impression that, without rebuttal, would be unfairly prejudicial to the defendant).

### 2. Exclusion of Other Incidents

Chism also challenges the exclusion of other accidents involving CNH balers. The district court excluded, under Fed. R. Evid. 403, four incidents where individuals were injured by CNH balers' pinch points, finding the other incidents were not

substantially similar to Chism's accident and "the slight probative value" was substantially outweighed by the danger of confusing the jury. The district court reasoned these other instances were not substantially similar, in part, because the other individuals were positioned in different locations on the baler than where Chism was positioned when he was injured.

Chism charges the district court erred because these incidents (1) showed CNH's notice of the defect; (2) illustrated the baler's defective design; (3) contradicted CNH's claim it had no reason to anticipate people would climb the baler while it was running; (4) demonstrated the unreasonableness of CNH's argument that the pinch point was adequately "guarded by location"; and (5) provided "relevant information for the jury to consider in awarding punitive damages" related to CNH's "failure to respond to these incidents by warning about the pinch point and guarding it to prevent injury."

The four excluded instances were not altogether lacking in probative value. See Lovett v. Union Pac. R.R., 201 F.3d 1074, 1081 (8th Cir. 2000). "However, admitting similar-incident evidence also threatens to raise extraneous controversial issues, confuse the issues, and be more prejudicial than probative." Id. Therefore, "the facts and circumstances of the other incidents must be 'substantially similar' to the case at bar to be admissible." Id.

Most of the other incidents Chism proffered involved different baler models, and the similarity of the closest excluded incidents differed from Chism's accident because the individuals were standing on the top of the baler's tire, as opposed to the platform over the twine box, when their arms became entangled. The district court found these incidents not substantially similar, in part, "[b]ecause [Chism's] theory of liability [was] focused on the location, accessibility, and use of the hay baler's twine box as a viewing platform to diagnose belt-tracking and material build-up problems."

The district court also may consider and choose to avoid a trial within a trial for each previous incident, because the parties may seek to establish the similarities or lack of similarities and contest the culpability for each incident. We find no abuse of discretion. See, e.g., Crump v. Versa Prods., Inc., 400 F.3d 1104, 1109 (8th Cir. 2005) (finding no abuse of discretion in the district court's exclusion of accidents caused by hinge failure of the same model ladder because the ladders were positioned differently when the accidents occurred).

### 3.     Proximity of the Pinch Point and the Baler Tire

Chism also argues the district court abused its discretion by excluding under Fed. R. Evid. 403 (1) expert testimony that the baler did not meet industry standards for safety guarding because the distance between the top of the baler's tire to the pinch point was less than required to be considered "guarded by location," and (2) photographs depicting the dimensions of the tire and the ability to reach the pinch point while standing on the tire. This evidence should have been admitted, Chism contends, along with the incidents where individuals were injured while standing on the baler's tire, and also because it was "independently relevant to show that the baler's design violate[d]" industry safety standards.

We agree with the exclusion of this evidence because it was minimally probative, cumulative, and would have unnecessarily confused the issue. See Fed. R. Evid. 403. Chism was standing on the platform above the twine box and not standing on the baler's tire when the accident occurred. Chism did offer evidence of the distance between the platform and the pinch point and explained his theory that industry standards did not permit location guarding based on that measurement. Chism also offered evidence through an expert witness that the pinch point was "not guarded by location when measured from a location on the tire."

### 4.      Total Number of Series 6 Balers Manufactured

Chism also challenges admission of the total number (57,826) of New Holland Series 6 balers.  Because Chism never objected to the introduction of the total number of balers manufactured, we review for plain error.  See Farrell, 563 F.3d at 377.

Relying on Coca-Cola Bottling Co. v. Gill, 100 S.W.3d 715 (Ark. 2003) and Airco, Inc. v. Simmons First Nat'l Bank, 638 S.W.2d 660 (Ark. 1982), Chism argues Arkansas law "does not condone the type of 'bean counting' argument made by [CNH] that its liability is contingent upon a large ratio of accidents to production models."  In addition, the evidence was highly prejudicial, Chism maintains, because the exclusion of the other incidents created a false impression that only three accidents, as opposed to seven, occurred as compared to the total number of Series 6 balers.

Chism's reliance on Arkansas cases is misplaced for two reasons.  First, the Federal Rules of Evidence, not Arkansas law, control the evidentiary issues of relevance in this diversity action.  See Spencer v. Young, 495 F.3d 945, 950 (8th Cir. 2007).  Second, neither cited Arkansas case forbids the admission of the absence of prior accidents, instead concluding such an absence did not defeat the defendant's liability, see Coca-Cola, 100 S.W.3d at 724-25, or a punitive damage award, see Airco, 638 S.W.2d 660-63.

Though a close call, the district court's decision to include the total number of similarly-designed hay balers in order to provide context for the jury to consider the substantially similar incidents was within the trial court's discretion.  See Sturm v. Clark Equip. Co., 547 F. Supp. 144, 145 (W.D. Mo. 1982) (admitting the total number of similar machines to establish "a considerable volume of the questioned equipment was in use, without injuries that plaintiffs claimed could be anticipated from the type of usage in question"), aff'd, 732 F.2d 161 (8th Cir. 1984) (unpub. table disp.); 1 McCormick on Evid. § 200 (6th ed. 2009) (reporting "[a] large number of cases recognize that lack of other accidents may be admissible to show (1) absence of the

defect or condition alleged, (2) the lack of a causal relationship between the injury and the defect or condition charged, (3) the nonexistence of an unduly dangerous situation, or (4) want of knowledge (or of grounds to realize) the danger") (footnotes omitted).

### C.     Other Claims

Chism also challenges the district court's exclusion under Fed. R. Evid. 403 of pictures and videos showing CNH balers manufactured after the model 648 baler, explaining these subsequent models are relevant because the new design provides greater access to the pinch point by widening the platform and adding non-skid tape. Chism argues the enlarged platform and non-skid tape is a clear acknowledgment by CNH it intends individuals to stand on the platform and access the pinch point. Chism claims this is probative because it contradicts CNH's defense that it could not anticipate individuals standing on the platform and accessing the pinch point.

The district court found these photographs and video exhibits had limited probative value and would unduly confuse the jury. We agree. CNH acknowledged at trial that individuals stood on the platform and that the baler was designed for this, but argued it was unreasonable for such individuals to stand on the platform while the baler was running. Chism made his point by showing the step and handle on the model 648 baler invited Chism to stand on the platform and access the pinch point. It was unnecessary to also demonstrate that subsequent models encouraged individuals to do the same.

Finally, we reject Chism's argument the district court erred in excluding expert witness testimony regarding the Engineering Code of Ethics (Code). Before trial, the district court determined Chism's expert witness, Gary Kurtz, Ph.D., could testify about the Code. Dr. Kurtz testified the Code obligated engineers to use "their knowledge and skill for the enhancement of human welfare" and "hold paramount the safety, health and welfare of the public in the performance of their professional duties." Chism asked Dr. Kurtz if these obligations under the Code made it necessary when

engineers "design machines such as a hay baler . . . to consider what operators may do when they're using this hay baler." The district court interrupted Dr. Kurtz, questioned him in camera, and concluded Dr. Kurtz's opinion as to whether CNH engineers complied with the Code was "not relevant to any issue in the case" and "is clearly prejudicial to [CNH]."

Chism argues Dr. Kurtz's testimony regarding the Code should have been admitted because "[t]he Code is required curriculum for accredited engineering schools" and "was also adopted as part of the bylaws of the [American Society of Agricultural Engineers (ASAE)], by which [CNH], by its membership in ASAE, agreed to abide." Further, by allowing Dr. Kurtz to testify about the basic tenets of the Code and then ruling it was inadmissible, Chism claims "[t]he net effect was as if the judge was instructing the jury that [CNH's] engineers were not required to hold paramount the safety of the public."

We agree with the district court that Dr. Kurtz's testimony regarding the Code was irrelevant because there was no legal force or effect to those rules and no foundation establishing whether any of the engineers or responsible people at CNH were exposed to the Code. Because the Code contains mere aspirational goals within the engineering industry and is not a body of ethical standards with legal force, the district court determined continued questioning of Dr. Kurtz about the Code would result in "a minitrial on a tangential and unrelated issue" that "ha[d] an enormous potential for prejudice." The district court did not abuse its discretion in excluding this evidence. See Fed. R. Evid. 403.

## III.   CONCLUSION

The judgment of the district court is affirmed.

_____