# United States Court of Appeals

### For the Eighth Circuit

_____

No. 15-2106

_____

Corrie Burckhard, as Personal Representative for the Estate of Todd Burckhard,
Decedent; Maria Mack, as Personal Representative for the Estate of Blaine H.
Mack, Decedent

*Plaintiffs - Appellees*

v.

BNSF Railway Company, a Delaware corporation; CUSA ES, LLC, doing
business as Coach America Crew Transport

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: February 11, 2016
Filed: September 14, 2016
[Published]

_____

Before SMITH and COLLOTON, Circuit Judges, and GRITZNER,[1] District
Judge.

_____

PER CURIAM.

_____

[1]The Honorable James E. Gritzner, United States District Judge for the
Southern District of Iowa, sitting by designation.

Plaintiffs, personal representatives of the decedents, sued BNSF Railway Company (BNSF) for the deaths of two BNSF employees, Todd Burckhard and Blaine Mack. After rejecting BNSF's motions for judgment as a matter of law (JMOL), the district court[2] submitted the case to a jury. The jury found in favor of plaintiffs. After the verdict, BNSF moved the district court to alter or amend the judgment based on an agreement that plaintiffs had entered with BNSF prior to trial. The district court denied BNSF's motion. On appeal, BNSF argues that the district court (1) improperly denied its JMOL motions, (2) made several erroneous evidentiary rulings, and (3) improperly denied its motion to alter or amend the judgment. We affirm.

## I. *Background*

Under federal law, railway employees can work a maximum of 12 consecutive hours. When their hours of service expire, railway employees need to be relieved mid-route. BNSF contracted with Coach America to provide transportation for some of its crews. After Burckhard and Mack were relieved by an incoming crew, Coach America dispatched a driver, Timothy Rennick, to transport them from Oswego, Montana, to Glasgow, Montana. Rennick collected Burckhard and Mack and began the approximately 40-mile trip. While en route, a pickup truck driven by a drunk driver, Ron Keiser, struck their vehicle. The collision killed Burckhard and Mack.

Plaintiffs presented three theories of BNSF's liability at trial: (1) BNSF, through its agent Rennick, negligently operated the vehicle used to transport Burckhard and Mack; (2) BNSF and its agent, Coach America, negligently failed to properly train Rennick; and (3) BNSF, through its agent Rennick, negligently failed to follow appropriate defensive driving rules. The evidence at trial concerning the

---

[2]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

crash included Rennick's statement taken the day after the crash by a BNSF claims representative,[3] the testimony of the Montana State Trooper that investigated the accident, and data from Coach America's vehicle's video camera and "black box." Additional evidence described the training that Coach America provided its drivers and a BNSF curfew policy.

Rennick told the claims representative that he saw Keiser's truck veer into his lane about "a minute, maybe two minutes at the most" before the collision. Rennick responded by pulling into Keiser's lane. Keiser steered his truck back into his lane of travel and collided with Rennick's vehicle before Rennick could react. The investigating Montana State Trooper, Sergeant Jeffrey Kent, testified that he found no signs that Keiser's truck left the paved road or 15-foot shoulder. The video camera captured the eight seconds before the collision in quarter-second snapshots. The camera's footage shows that Rennick attempted to avoid Keiser's vehicle by entering Keiser's lane. According to the "black box," Rennick did not apply braking until approximately 2.75 seconds before the collision. The "black box" also showed that the speed of Rennick's vehicle was 51 miles per hour 2.5 seconds before the collision.

Over BNSF's objection, the district court allowed plaintiffs to submit evidence of a BNSF curfew policy that applied to "deadheading."[4] The curfew policy forbids transportation of railway employees on public roads between 10:00 p.m. and 4:00 a.m. when "deadheading." According to BNSF, one of the reasons for the curfew was "a commonsense, good-judgment decision of daylight versus night." BNSF explained

---

[3]Rennick passed away before he could be deposed.

[4]BNSF describes "deadheading" as a process that involves transporting train crews over a long distance in order to staff terminals sufficiently. BNSF explains that this process is planned in advance and is different than the transportation required to relieve railway employees when their hours of service have expired. Burckhard and Mack were not transported pursuant to a "deadheading" process but were relieved as part of a combined service crew.

that transportation during the night presents additional risks, such as drunk and sleepy drivers.

BNSF sought to introduce evidence that Burckhard and Mack were given a choice between transportation by vehicle or train once they were relieved from service. The district court excluded the evidence to avoid confusing the jury and because the evidence could potentially inject irrelevant defenses into the trial.

BNSF also sought to have Sergeant Kent testify that he believed that Rennick did not act negligently and chose the safest course of action given the circumstances. Plaintiffs objected to the testimony as cumulative. The district court agreed and also held that it was inappropriate to allow Sergeant Kent to testify as a lay witness on the ultimate factual issue. The district court allowed Sergeant Kent to testify about factual information obtained as part of his investigation but prohibited Sergeant Kent from testifying that Rennick acted reasonably.

At the close of plaintiffs' case, BNSF moved for JMOL pursuant to Federal Rule of Civil Procedure 50(a). BNSF argued that plaintiffs' first theory of liability failed because they did not offer sufficient evidence that the risk was reasonably foreseeable. Likewise, BNSF argued that plaintiffs' third theory of liability failed because they did not offer expert testimony establishing that BNSF had a duty to implement a curfew policy covering employees, such as Burckhard and Mack. BNSF did not renew these motions under Rule 50(b) after the jury verdict.

Following the verdict, BNSF moved the district court to alter or amend the judgment. Plaintiffs received $600,000 before trial in "Off Track Vehicle Accident Benefits" as part of BNSF's Collective Bargaining Agreement. BNSF claimed that the agreement required plaintiffs to apply the $600,000 as an offset to any recovery. The district court denied the motion because it considered the agreement to be collateral to the merits of the case. BNSF now appeals.

## II. *Discussion*

Plaintiffs suit arises under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 *et seq*. FELA renders railroads liable for injuries or deaths of its employees "resulting in whole or in part from the negligence of [the railroad]." 45 U.S.C. § 51.

### A. *JMOL Motions*

In preverdict motions, BNSF moved the district court to enter JMOL on two bases: (1) "Plaintiffs failed to offer any evidence that [BNSF] should have or could have foreseen the conduct of Keiser that cause[d] the harm at issue"; and (2) "Plaintiffs failed to offer *any* expert testimony to establish the standard of care applicable to BNSF for crew calls and train movements." BNSF argues that the district court erred in denying these JMOL motions. Plaintiffs contend that BNSF waived these arguments by failing to renew them in a Rule 50(b) motion. BNSF counters that its arguments involve legal questions and therefore did not need to be raised in a renewed JMOL.

Typically, we review de novo a district court's denial of a JMOL motion, viewing the evidence in the light most favorable to the verdict. *Hyundai Motor Fin. Co. v. McKay Motors I, LLC*, 574 F.3d 637, 640 (8th Cir. 2009). But we have no basis to review a party's JMOL motion challenging the sufficiency of the evidence where the party does not renew its Rule 50(a) motion in a postverdict Rule 50(b) motion. *Ludlow v. BNSF Ry. Co.*, 788 F.3d 794, 800 (8th Cir. 2015). BNSF argues that legal questions, on the other hand, are appealable after final judgment even if not renewed in a postverdict motion. Assuming for the sake of analysis that a purely legal issue may be raised on appeal without a Rule 50(b) motion, neither of BNSF's two disputed issues on appeal falls in that category.

### 1. *Foreseeability*

BNSF casts its foreseeability argument as a legal question. It argues that a drunk driver's actions are not reasonably foreseeable. Therefore, BNSF contends, as a matter of law, that it did not breach its duty to Burckhard and Mack by failing to take measures to protect against Keiser's driving.

Although FELA does not incorporate common law "proximate causation," reasonable foreseeability of harm is an essential ingredient of FELA negligence. *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 702–03 (2011). Reasonable foreseeability circumscribes the duties a railroad owes its employees. *Id.* Where a railroad "has no reasonable ground to anticipate that a particular condition . . . would or might result in a mishap and injury, then the [railroad] is not required to do anything to correct [the] condition." *Id.* at 703 (first and third alteration in original) (quotation and citation omitted). Provided that negligence is proved, no matter how insignificant its role in producing the injury, "the manner in which [the injury] occurred" need not be foreseeable. *Id.* at 703–04.

At oral argument, BNSF argued that plaintiffs needed to prove certain things—"a pattern of accidents," "frequent death, injury, disability," and a "dangerous road"—for the accident to be reasonably foreseeable. Its brief likewise argues that "there must be *evidence* of foreseeability of injury to the railroad for a plaintiff to prevail in an FELA case." (Emphasis added.) Nevertheless, when confronted with its failure to renew its argument in a postverdict JMOL motion, BNSF urged that foreseeability is a legal question and not something to be proved. Our case law addressing reasonable foreseeability of harm, however, reveals that the question is factual and not legal. *See, e.g.*, *Lager v. Chicago Nw. Transp. Co.*, 122 F.3d 523, 525 (8th Cir. 1997) (affirming grant of summary judgment to railroad because "[t]he evidence in the record . . . [was] insufficient to support [plaintiff's] claim"); *Vidlak v. Burlington N. R.R.*, 16 F.3d 1229 (8th Cir. 1993) (unpublished per curiam) (affirming grant of summary judgment to railroad because plaintiff "failed to offer any evidence

-6-

of foreseeability"); *Ackley v. Chicago & N. W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987) (noting that "[t]he Supreme Court has emphasized the jury's role in determining whether an employer has breached its duties under the FELA"); *Richardson v. Missouri Pac. R. Co.*, 677 F.2d 663, 666 (8th Cir. 1982) (reversing judgment of the district court because plaintiff "failed to adduce sufficient evidence" of reasonably foreseeability). The Supreme Court's decision in *McBride* confirms this route. Whether a railroad has reasonable grounds to foresee that a particular condition might result in an injury depends on the evidence of each particular case. *See McBride*, 564 U.S. at 702–03. We have no basis to review BNSF's foreseeability argument because it challenges the sufficiency of the evidence and was not renewed in a Rule 50(b) motion.

### 2. *Expert Testimony*

BNSF also contends that whether expert testimony concerning the applicable standard of care was required to support the jury's finding of negligence is a legal issue that need not be renewed in a Rule 50(b) motion. We reject this suggestion and conclude that BNSF failed to preserve its challenge on this point.

According to BNSF, the disputed issue at trial was whether it breached its standard of care by allowing employees to choose between transportation by van or by train. The company contends that the plaintiffs should have been required to present expert testimony on BNSF's standard of care in transporting employees. Without such evidence, BNSF asserts, the district court should have dismissed the claim alleging negligence for allowing the decedents to be transported by van at night.

Assuming for the sake of analysis that "purely legal issues" need not be raised in a Rule 50(b) motion to preserve those issues for appeal, BNSF's argument on expert testimony is not such an issue. Whether expert testimony is necessary depends on the facts of the case. Here, the question is whether there was sufficient evidence

to establish a standard of care without expert testimony. The district court said that lay testimony was enough to support a finding of negligence; BNSF agues that the lay testimony was insufficient and that an expert was needed. Our cases show that this is a dispute over the sufficiency of the evidence. *S&A Farms, Inc. v. Farm.com*, 678 F.3d 949, 954–55 (8th Cir. 2012) (concluding that where plaintiff presented no expert testimony on the relevant standard of care, a reasonable jury would have no way of knowing whether Farms.com acted within the standard of care, so summary judgment was appropriate); *Hall v. Arthur*, 141 F.3d 844, 847 (8th Cir. 1998) (concluding that because expert testimony concerning surgeon's standard of care could be applicable to his assistant, "we reject Dr. Gocio's assertion that there was insufficient evidence that he violated the standard of care"); *see also Olivier v. Robert L. Yeager Mental Health Ctr.*, 398 F.3d 183, 190-91 (2d Cir. 2005) ("Because Olivier did not introduce expert testimony as to medical standards, there was no legally sufficient evidentiary basis for a reasonable jury to find for Olivier.") (internal quotation and brackets omitted).

BNSF was required to renew in a Rule 50(b) motion its contention that lay testimony was insufficient to establish a standard of care and that expert testimony was required. *See Rosenberg v. DVI Receivables XIV, LLC*, 818 F.3d 1283, 1292 (11th Cir. 2016). Because BNSF failed to do so, the issue is waived.

B. *Evidentiary Rulings*

BNSF next argues that the district court erred in the following three evidentiary rulings: (1) the district court excluded evidence that Burckhard and Mack had the option to be transported by train or car, (2) the district court admitted evidence of BNSF's curfew policy, and (3) the district court limited Sergeant Kent's testimony. We review a district court's evidentiary rulings "for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict." *Chism v. CNH Am. LLC*, 638 F.3d 637, 640 (8th Cir. 2011) (quotation and citation omitted).

### 1. *Choice of Means of Transportation*

BNSF sought to introduce evidence that Burckhard and Mack were given a choice of train or car transportation upon expiration of their hours of service. BNSF argues that it was prejudiced by the district court's refusal to allow the proffered evidence because plaintiffs were able to leave the jury with the impression that BNSF forced Burckhard and Mack into a less-safe mode of transportation.

The defenses of contributory negligence and assumption of the risk were not present in the case. The district court excluded evidence relating to choice of transportation under Federal Rule of Evidence 403 to avoid potentially injecting those defenses into the trial. Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The district court did not abuse its discretion in excluding the evidence. A district court's Rule 403 ruling "depends on factors that are uniquely accessible to the trial judge who is present in the courtroom and uniquely inaccessible to an appellate judge who must take the case on a cold record." *Olson v. Ford Motor Co.*, 481 F.3d 619, 623 (8th Cir. 2007). BNSF contends that the probative value of the evidence was high because it helped establish that the risk of a drunk driver was not foreseeable. Assuming that the evidence had some probative value, the district court, nonetheless, had to weigh its probative value against its potential prejudice. Offering evidence that the decedents could have chosen a different mode of transportation proves little where the gravamen of the negligence claim is not the mode of transportation but the negligence of the transport operator. Despite the exclusion of its preferred evidence, BNSF was able to offer evidence that federal law permitted transportation at night on public roadways. BNSF was also allowed to argue in closing that transportation at night on public roadways is not negligent. The district court ultimately determined that the evidence's probative value was substantially outweighed by the potential of

confusing the issues caused by injecting irrelevant defenses. This was not an abuse of discretion.

## 2. *Curfew Policy*

BNSF also argues that the district court erred when it admitted evidence of BNSF's curfew policy. Plaintiffs were allowed to introduce evidence that BNSF prohibited deadheading train crews from public-roadway transportation between 10:00 p.m. and 4:00 a.m. BNSF argues that the evidence had "no bearing on this action" because Burckhard and Mack were not deadheading and that it "proved to be extremely prejudicial."

Rule 401 defines relevant evidence as evidence that "has any tendency to make a [consequential] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, the district court found that the evidence was relevant because it showed that BNSF had some concerns about the transportation of its employees at night on the public roadways. BNSF's knowledge of the risks associated with nighttime driving was a consequential fact in plaintiffs' negligence action. This evidence had some tendency to make that fact more probable. The admission of the evidence also did not unfairly prejudice BNSF. The district court permitted BNSF to offer evidence addressing the differences between deadheading crews and the combined service crews. The district court did not abuse its discretion in admitting the evidence relating to BNSF's deadheading policy.

## 3. *Sergeant Kent's Opinion Testimony*

BNSF sought to have Sergeant Kent testify that in his opinion Rennick did not react negligently to Keiser's driving. BNSF argues that the district court improperly excluded a portion of Sergeant Kent's trial testimony for two reasons. First, it claims that the district court improperly treated Sergeant Kent's testimony as lay opinion rather than expert testimony. Second, even if it were lay opinion, BNSF argues that the testimony was improperly excluded under Rule 403.

The district court determined that Sergeant Kent's proffered testimony characterizing Keiser's driving went beyond the scope of inquiry of an investigating officer. The district court ruled that a qualified expert should provide analysis of Rennick's reaction to Keiser's driving instead. The district court also considered the testimony inadmissible under Rule 403 on the grounds that its probative value was far outweighed by the dangers of unfair prejudice and cumulative evidence. The district court permitted two other BNSF witnesses—Aubrey Hutchins, Coach America's safety director, and Clancy King, BNSF's defensive driving expert—to comment on Rennick's driving. Sergeant Kent's testimony was cumulative of the testimony of these witnesses, and it was not an abuse of discretion for the district court to exclude it on that ground. *See* Fed. R. Evid. 403; *see also Van Dyke v. Coburn Enters., Inc.*, 873 F.2d 1094, 1101–02 (8th Cir. 1989) (explaining that a district court may exclude evidence that has been "rehashed and rehashed").

## C. *Rule 59(e) Motion*

Lastly, BNSF argues that the district court erred in denying its motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). After the jury returned its verdict and the district court entered judgment, BNSF moved the district court to offset the judgment based on the "Off Track Vehicle Accident Benefits" agreement entered into by plaintiffs and BNSF. The agreement stated that the amounts received by plaintiffs "*may* be applied as an offset by the railroad against recovery that is obtained." (Emphasis added.) We accord a district court broad discretion in determining whether to grant a motion to alter or amend judgment, and we will not reverse absent a clear abuse of discretion. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).

One of the main purposes of Rule 59(e) is to allow a district court to "rectify its own mistakes in the period immediately following the entry of judgment." *White v. N.H. Dept. of Emp't Sec.*, 455 U.S. 445, 450 (1982) (footnote omitted). "Federal Rule of Civil Procedure 59(e) was adopted to clarify a district court's power to correct

its own mistakes in the time period immediately following entry of judgment." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) (citation omitted). Thus, Rule 59(e) generally may be invoked "only to support reconsideration of matters properly encompassed in a decision of the merits." *White*, 455 U.S. at 451 (citation omitted).

The district court denied BNSF's motion because the agreement that was the basis for BNSF's claimed setoff was collateral to the merits of plaintiffs' FELA action. BNSF's motion to alter or amend the judgment is based upon payments it made to plaintiffs pursuant to an agreement that was not an issue resolved at trial. The action before the district court, and tried to the jury, encompassed only claims under FELA and negligence under Montana common law. The agreement was not encompassed within the decision on the merits of plaintiffs FELA case. Moreover, the agreement had the potential to spawn additional litigation over the use of the word "may." The district court did not abuse its discretion in denying BNSF's Rule 59(e) motion.

### III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

SMITH, Circuit Judge, concurring.

I concur in the court's opinion. I write separately because I conclude that whether expert testimony concerning the applicable standard of care was required to support the jury's negligence finding is a legal question that BNSF need not have renewed in a Rule 50(b) motion. *See supra* Part.II.A.2. Nonetheless, I find that the district court did not err in refusing to require plaintiffs to offer expert testimony.

Subject matter requiring specialized knowledge and training such as medicine, engineering, and architecture generally requires expert testimony to aid the factfinder. But, where the claim is basic negligence and no specialized knowledge is needed, the

jury can render a decision without expert testimony. Deciding whether expert testimony is needed to establish a claim turns on the specific facts of the case. *See Bartak v. Bell-Galyardt & Wells, Inc.*, 629 F.2d 523, 530 (8th Cir. 1980). While the determination is fact dependent, it also rests upon a legal standard. The question is neither purely legal nor purely factual; it is a mixed question of law and fact. *See Pullman-Standard v. Swint*, 456 U.S. 273, 290 n.19 (1982) (noting that mixed questions of law and fact are "questions in which the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated"). We have committed the determination of whether expert testimony is admitted to the sound discretion of trial courts, and we will not reverse a trial court's decision unless it is clearly erroneous. *Bartak*, 629 F.2d at 530.

Here, BNSF's argument is that the case presented questions that simply could not be determined by a factfinder without expert input of the standard of proper or reasonable care in the railroad industry. This is a legal question, and like all legal questions, it cannot be resolved in the abstract but must be analyzed in conjunction with the facts of the particular case. Doing so does not convert it into a sufficiency-of-the-evidence argument; it remains a legal question. *Cf. Rosemann v. Sigillito*, 785 F.3d 1175, 1181 (8th Cir. 2015) (agreeing with the district court that expert testimony was required to establish the proper standard of care and, without it, the plaintiff's claim of professional negligence was not submissible); *Brooks v. Union Pac. R.R.*, 620 F.3d 896, 900 (8th Cir. 2010) (affirming grant of summary judgment to defendant because plaintiff failed to offer expert testimony). For that reason, I conclude that BNSF's argument challenges a determination committed to the district court, not the jury, and, therefore, is not an argument that must be renewed in a Rule 50(b) motion. *See Linden v. CNH Am., LLC*, 673 F.3d 829, 833 (8th Cir. 2012) (limiting the requirement to renew a Rule 50(a) motion to sufficiency-of-the-evidence challenges). We require an argument to be renewed in a Rule 50(b) motion "because it allows the

district court, which has first-hand knowledge of witnesses, testimony, and issues, an opportunity after the verdict to review the legal sufficiency of the evidence." *Ludlow*, 788 F.3d at 800 (quotations and citations omitted). The trial court thus is able to review the decision of the factfinder, be it a jury or the court itself. Whether expert testimony is necessary, though, is not entrusted to the factfinder; rather, it is a determination made by the court to assist the factfinder in weighing the evidence. Here, BNSF's expert-testimony argument, directed at the trial court, is preserved for appellate review.[5]

The ultimate determination of whether expert testimony is required, however, remains committed to the trial court's sound discretion; here, the district court did not err in refusing to require plaintiffs to offer expert testimony on crew calls and train movements. Plaintiffs' theory of liability did not rely on BNSF's negligence in the mode of transportation. In its final jury instructions, the district court told the jury to disregard any evidence or argument "suggesting that BNSF should have scheduled

---

[5]The per curiam opinion cites *Hall v. Arthur*, 141 F.3d 844 (8th Cir. 1998), in support of its conclusion that BNSF's argument that expert testimony was required is a sufficiency-of-the-evidence argument. Specifically, the opinion relies on the following statement: "[W]e reject Dr. Gocio's assertion that there was insufficient evidence that he violated the applicable standard of care." *Id*. at 847. This statement does not bear the load placed upon it, as it simply does not state that the determination of whether expert testimony is required is a sufficiency-of-the-evidence question. *Hall* dealt with a doctor arguing "that since he acted only as an assistant in Mr. Hall's surgery, the Halls had to produce expert testimony as to the standard of care applicable to an assistant in order to allow the jury to reach the question of his potential negligence." *Id*. As the court noted, the applicable law required that the violation of the standard of care be established by expert testimony when the asserted negligence does not lie within the jury's comprehension as a matter of common knowledge. *Id*. The court merely rejected the doctor's argument that a *separate* expert was required to establish the standard applicable to him as an assistant and that the plaintiffs could not rely on the expert to establish the standard of care for the lead doctor. *Id*.

its trains and crews to make sure that Todd Burckhard and Blaine Mack reached Glasgow before their 12-hours in service expired." The district court permitted plaintiffs to reference BNSF's curfew policy in arguing that BNSF knew that nighttime transportation by public roadways presented additional risks. The district court considered these additional risks a "matter of common sense." Plaintiffs' argument went to the narrow issue of the foreseeability of drunk drivers; contrary to BNSF's contention, it did not introduce the additional theory of liability that BNSF was negligent for permitting nighttime transportation on public roadways. Thus, BNSF's standard of care for crew calls and train movements was not at issue. Accordingly, I conclude that expert testimony was not necessary on this subject.

_____