# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1139

_____

United States of America

*Plaintiff - Appellee*

v.

Chavez Spotted Horse

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Aberdeen

_____

Submitted: December 14, 2018
Filed: January 28, 2019

_____

Before LOKEN and ERICKSON, Circuit Judges, and MAGNUSON,[1] District
Judge.

_____

ERICKSON, Circuit Judge.

A jury convicted Chavez Spotted Horse of Receipt of Images Depicting the
Sexual Exploitation of Minors, in violation of 18 U.S.C. §§ 2252(a)(2), 2252(b)(1),

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District
of Minnesota, sitting by designation.

and 2256(2)(A).[2] The district court[3] sentenced Spotted Horse to a term of 78 months' imprisonment. Spotted Horse appeals, arguing the district court erred by (1) denying his motion for a mistrial; (2) allowing the government's expert to testify outside the scope of the expert notice provided under Fed. R. Crim. P. 16 ("Rule 16 notice"); and (3) refusing to replace an emotional juror. Finding no abuse of discretion by the district court, we affirm.

## I. Background

In February 2015, while monitoring the Internet for suspected peer-to-peer activity involving child pornography, agents of the North Dakota Internet Crimes Against Children Task Force were alerted that an unknown computer was requesting images containing child pornography. An administrative subpoena was issued to the internet service provider to obtain the location of and person's name assigned to the IP address. The IP address was assigned to Spotted Horse and Kristi Geigle in Little Eagle, South Dakota.

The North Dakota agents transferred their information to the South Dakota Division of Criminal Investigation. Law enforcement officers in South Dakota requested assistance from the Federal Bureau of Investigation since the suspected premises was located on the Standing Rock Indian Reservation. Agents executed a search warrant at Spotted Horses's residence on November 3, 2015. They seized three laptop computers, numerous CDs, hard drives, a tablet, a digital camera, and

---

[2]Spotted Horse was also convicted of Possession of Images Depicting the Sexual Exploitation of Minors, in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 2256(8). The court granted the government's motion to dismiss this count before sentencing.

[3]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

digital media. One of the laptops examined was set up in a "RAID" configuration. A computer configured in a RAID divides the operating system between more than one hard drive. According to the government's forensic expert, when the operating system is spanned between two or more hard drives, many of the file attributes and sometimes the file path and file name are lost. Such a configuration hampers the ability to examine the computer's contents because the only way for two or more drives to function together is to run the computer with the password. Given the risk of altering evidence by operating Spotted Horse's computer, the government's expert imaged two hard drives seized by law enforcement. A forensic examination of the imaged hard drives revealed 1,044 images, of which 246 were considered child pornography. Included were images determined to be from known child pornography series, including the Vicky series and the Lolita series. The examination further revealed that some of the images were found on both drives, even though the laptop was set up in a RAID configuration. The government's expert opined the images found on the drives were placed on the computer after the RAID was created.

Spotted Horse voluntarily participated in an interview with a law enforcement officer. He initially denied accessing child pornography on the Internet. Spotted Horse subsequently admitted to viewing child pornography three to five times a month for the preceding two to three years, with the most recent viewing the week before execution of the search warrant. Spotted Horse indicated to the officer that he attempted to conceal his activities by using a Tor Browser to hide his IP address when accessing child pornography and by utilizing "wiping" software to delete images. Spotted Horse provided information to the officer regarding the computers he used to access child pornography.

Spotted Horse was charged with receipt and possession of child pornography. During the three-day trial, the government's evidence included testimony from a forensic expert, Spotted Horse's recorded interview with law enforcement, and 14 images of child pornography. The jury convicted Spotted Horse on both counts.

Before sentencing, the court granted the government's motion to dismiss the possession count. On the receipt count, the court sentenced Spotted Horse to 78 months' imprisonment to be followed by five years of supervision.[4] This timely appeal followed.

## II.    Discussion

### A.    Forensic Expert Testimony

Spotted Horse argues the district court erred when it allowed the government's forensic expert to testify as to three issues: (1) her opinion on how and when information from the laptop was stored onto the hard drives; (2) the fact she had reviewed the transcript of Spotted Horse's recorded interview with law enforcement; and (3) the age of a girl in one of the images from a series known by law enforcement to contain child pornography. As a consequence of the court's refusal to discuss the first two evidentiary disputes at sidebar, the prosecutor announced in front of the jury that Spotted Horse had hired his own forensic expert who talked to the government's expert. Spotted Horse did not call a forensic expert at trial. He asserts the conveyance of this additional information was "highly prejudicial" because the jury "undoubtedly" speculated about why his expert did not testify. Spotted Horse moved for a mistrial based on the admission of evidence that was purportedly outside the scope of the government's Rule 16 notice and which "sent conflicting and confusing signals to the jury."

This Court reviews the denial of a motion for a mistrial under the abuse of discretion standard. United States v. Kopecky, 891 F.3d 340, 343 (8th Cir. 2018) (citing United States v. Beeks, 224 F.3d 741, 745 (8th Cir. 2000)). We "review

---

[4]The sentence in this case was ordered to be served consecutive to the sentence imposed in South Dakota District Court Case No.1:17-cr-10005, Eighth Circuit Court of Appeals No. 18-1138.

evidentiary rulings 'for clear abuse of discretion, reversing only when an improper evidentiary ruling affected the defendant's substantial rights or had more than a slight influence on the verdict.'" Chism v. CNH Am. LLC, 638 F.3d 637, 640 (8th Cir. 2011) (quoting United States v. Summage, 575 F.3d 864, 877 (8th Cir. 2009)).

As noted by the district court, the expert notice was broad and covered a variety of subjects, including, as examples, the expert's knowledge pertaining to storage of Internet searches in general terms and/or as applied in this case, her knowledge regarding the process of saving downloaded material in general terms and/or as applied in this case, her understanding of time stamps on data in general terms and/or as applied in this case, her knowledge and understanding of common methods of "wiping" or "sanitizing" computers and hard drives to remove evidence of child pornography, and her knowledge and opinions regarding the examination of computer media seized in this particular case. Expert testimony pertaining to the laptop's RAID configuration and the expert's opinions regarding when the images were stored on the hard drives are subjects clearly within the scope of the Rule 16 notice.

The district court did not explicitly address Spotted Horse's objection that the expert's revelation that the transcript of Spotted Horse's law enforcement interview was outside the scope of the Rule 16 notice. Rather, the court determined the testimony was admissible, concluding:

> An expert may rely on studies, may rely on experience. And she may rely on anything that's part of the record here. And the transcript -- actually the recording itself is part of the record here, that any expert would be expected to review along with all the other evidence in the case before expressing an opinion and coming to court to testify.

After further discussion about the expert's review of the transcript, the court reiterated: "Well, obviously, as I said, she is in fact obligated to look at the entire file

including the transcript and she has done that. She shouldn't be coming to court and testifying as an expert unless she is very familiar with the file."

Fed. R. Crim. P. 16(a)(1)(G) requires the government to disclose, upon request, a summary "describ[ing] the [expert] witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Spotted Horse has not shown a Rule 16 violation. The rule does not require a recitation of every piece of information in the case that the expert reviewed. It requires notice, in summary fashion, of the expert's opinions, bases for the opinions, and reasons for the opinions. More importantly, at most, the record demonstrates that any information obtained by reviewing the transcript corroborated the expert's opinions rather than formed the basis for her opinions.

We find no significance, no evidence of jury confusion, and no evidence of possible prejudice arising from the expert's review of the transcript of the recording rather than the recording itself. The recording was admitted at trial. The jury was free to reject any expert opinion that they found to be inconsistent with the evidence. Further, the court controlled the scope of the expert testimony. While the court permitted the expert to testify that she reviewed the transcript of Spotted Horse's interview, it directed the prosecutor to move on when he tried to elicit statements Spotted Horse made during the interview through the expert. The court did not abuse its discretion by allowing the expert to inform the jury that she reviewed the transcript of Spotted Horse's interview with law enforcement.

As the court was entertaining arguments about the scope of permissible expert testimony, the prosecutor said: "I would point out to the Court [defense counsel] did have an expert and his expert did talk with out expert pretrial so that they could discuss these matters - -." Because Spotted Horse did not object to the prosecutor's fleeting comment about the government's expert consulting with Spotted Horse's

expert, who was not called as a witness at trial, we review his claim for plain error. Chism, 638 F.3d at 640.

"Under plain error review, we will only reverse where the error was plain, affected the party's substantial rights, and 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" Id. (quoting United States v. Farrell, 563 F.3d 364, 377 (8th Cir. 2009)). Spotted Horse has not identified any evidence that the jury "undoubtedly" wondered what happened to his expert, or that the jury gave any consideration to this statement made during what turned out to be a fairly extensive colloquy regarding the scope of permissible expert testimony. While it would have been preferable to make the arguments outside the jury's presence, we do not find the prosecutor's fleeting reference to Spotted Horse's expert affected Spotted Horse's substantial rights or affected the fairness or integrity of the trial. The district court did not abuse its discretion in denying a mistrial based on these claimed errors.

The court also allowed the expert to testify as to the age of a girl in a "known series" of child pornography found on Spotted Horse's computer. The expert testified that a "known series" is one in which the child depicted in an image has been identified and the child's age verified. In this case, the expert informed the jury that the age of the girl depicted in a Vicky series image found on Spotted Horse's laptop was 10 or 11 years old at the time the photograph was taken.

Spotted Horse argues this testimony was outside the scope of the Rule 16 notice. This testimony was clearly within the scope of the notice. The notice included expert testimony regarding the expert's knowledge of law enforcement's utilization of the National Center for Missing and Exploited Children and her knowledge and personal recognition of known child pornography series. Spotted Horse's argument that the testimony was outside of the scope of the expert notice is without merit.

*B.*      *Request to Seat Alternate Juror*


Spotted Horse argues the district court was required to replace a juror who cried when images of child pornography were published at trial during the government's case-in-chief. We have explained the standard for replacing a juror as follows:

> The decision to replace a juror with an alternate juror is committed to the discretion of the trial court. If the record shows a legitimate basis for the district court's decision to retain the juror, there is no abuse of discretion. Absent a showing of actual bias on the part of a prospective juror, this court should defer to the discretion of the trial court on a motion for mistrial related to the composition of the jury. Finally, a district court does not abuse its discretion by refusing to excuse a challenged juror after the juror affirmed their impartiality and the judge favorably evaluated their demeanor. The courts presume that a prospective juror is impartial, and a party seeking to strike a venire member for cause must show that the prospective juror is unable to lay aside his or her impressions or opinions and render a verdict based on the evidence presented in court. Essentially, to fail this standard, a juror must profess his inability to be impartial and resist any attempt to rehabilitate his position.

United States v. Dale, 614 F.3d 942, 959 (8th Cir. 2010) (internal quotations and citations omitted).


Spotted Horse raised no concern about the emotional juror when it happened. The issue was brought to the court's attention for the first time after the parties had rested and the prosecutor was about to commence his closing argument. The court denied Spotted Horse's request for individual voir dire of the juror. Before officially releasing the alternate juror, the court identified the alternate juror and asked whether the other twelve jurors were "feeling okay" and whether they were "able to proceed

with no problem." No juror expressed any concern. A juror's emotional reaction to seeing images of child pornography does not render a juror unable to be fair and impartial or establish that a juror's objectivity has been compromised. "The tears of a juror may reflect a sympathetic nature, but standing alone [do] not demonstrate incompetency." United States v. Marchant, 774 F.2d 888, 895 (8th Cir. 1985). The record is devoid of any evidence that the juror impacted by images of child pornography was unable to be fair or impartial. The district court did not abuse its discretion by refusing to remove the juror.

## III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____