# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1471
_____

United States of America,

*Plaintiff - Appellee,*

v.

Roger Ricky Counts,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of North Dakota - Eastern
_____

Submitted: February 18, 2022
Filed: July 5, 2022
_____

Before LOKEN, COLLOTON, and SHEPHERD, Circuit Judges.
_____

COLLOTON, Circuit Judge.

A jury convicted Roger Counts of aggravated sexual abuse of a child, and Counts challenges two evidentiary rulings on appeal. We conclude that there was no error, and therefore affirm the judgment of the district court.[1]

_____

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

## I.

From May 2016 to June 2017, an eight-year-old boy with initials M.D. was placed in foster care with Roger and Rhonda Counts. Another boy with initials D.D. was in foster care at the home for one month during that period. In June 2017, M.D. disclosed that Roger Counts had sexually abused him during foster care. M.D. first told his older brother and aunt about what happened, and M.D.'s aunt reported suspected child abuse. Five days later, M.D. and D.D. told an employee of a youth shelter that Roger Counts had done inappropriate things when they lived with him. The employee and the director of the youth shelter both reported suspected child abuse.

The next day, a forensic interviewer with the FBI named Bonnie Fries interviewed M.D. The boy described how Counts sexually abused him, and Fries made a video recording of the interview.

A grand jury charged Counts with aggravated sexual abuse of a child. *See* 18 U.S.C. § 2241(c). After several continuances, trial was scheduled to begin on October 22, 2019. The previous month, on September 10, 2019, the government notified Counts that it intended to call Dr. Stacey Benson as an expert witness. The government's letter stated that Dr. Benson was a licensed clinical psychologist who had focused her practice on the evaluation and treatment of sex offenders for over twenty years. The letter explained that Dr. Benson would testify about the behaviors of adults who sexually victimize children and the methods that such offenders use to control their victims. Counts moved to exclude Dr. Benson's testimony on the grounds that the government's notice was untimely and lacked specificity. Then, two weeks before trial, Counts moved to continue the trial due to a health issue. The court granted the motion and rescheduled the trial for February 4, 2020.

In an order filed on January 28, 2020, the district court denied Counts's motion to exclude Dr. Benson's testimony. But the court ordered the government to provide a written summary of the opinions about which Dr. Benson would testify, as well as the bases and reasons for those opinions. *See* Fed. R. Crim. P. 16(a)(1)(G). Two days later, the government sent Counts a detailed letter summarizing the opinions that Dr. Benson would offer at trial. The letter stated that Dr. Benson would explain certain general patterns of sex offenders, including how offenders select, groom, and manipulate their victims. The letter concluded by stating that "Dr. Benson will not be asked to testify about the defendant in this case; she will testify only as to general characteristics and behaviors of sexual offenders with which she is familiar based on her training and experience as a psychologist."

After another continuance in the trial date, Counts renewed his motion to exclude Dr. Benson's testimony, this time arguing that her testimony was irrelevant because she did not evaluate Counts. The government responded on February 5 that it "does not intend to elicit testimony from Dr. Benson regarding her opinion of this specific defendant," and that her testimony "will be concerned with general behavior patters exhibited by sex offenders who offend against children." In a footnote, the government disclosed that Dr. Benson had "reviewed the forensic interviews of M.D. and D.D. and the interview of the defendant." The government pledged not to ask Dr. Benson about Counts's behaviors in particular, but said that "if asked if the defendant's behaviors and explanations in his interview were consistent with those of a sexual offender who groomed his victims she would answer in the affirmative."

The jury trial began on February 10, 2020. Before the jury was selected, Counts renewed his objection to Dr. Benson's testimony on the basis that her testimony was irrelevant, and added that Counts was not previously aware that Dr. Benson had reviewed case-specific materials. The district court ruled that Dr. Benson's testimony about the general characteristics of sex offenders was relevant, but prohibited her from offering any opinion that she formed about Counts based on

her review of the case file. The court further decided that defense counsel could cross-examine Dr. Benson about whether she had evaluated Counts, M.D., or D.D., without opening the door to testimony regarding Counts's behavior.

Dr. Benson testified on the second day of trial about the general characteristics of sex offenders who victimize non-family members under the age of twelve. Dr. Benson also testified that she had not examined Counts or M.D. At Counts's request, the court instructed the jury at the conclusion of Dr. Benson's testimony that she was not "opining as to Roger Ricky Counts' conduct in this case," that she "has not examined him," and that she "has reached no conclusions as to whether or not Roger Ricky Counts engaged in any of that behavior that she testified is typical" of child sex offenders.

M.D. also testified on the second day of trial. The boy, then eleven years old, described how Counts sexually abused him during foster care. M.D. also confirmed that he was interviewed by someone from "child welfare" about Counts's abuse. Defense counsel thoroughly cross-examined M.D., attacking his memory and potential motivations to lie about the abuse.

Bonnie Fries of the FBI testified the next day. During her testimony, over Counts's objection, the government introduced the video recording of Fries's forensic interview with M.D. The recording was published to the jury.

The jury found Counts guilty of aggravated sexual abuse of a child. The district court sentenced him to thirty years' imprisonment. Counts appeals his conviction, arguing that the district court erred in admitting (1) Dr. Benson's expert testimony and (2) the video recording of M.D.'s forensic interview.

II.

Counts first argues that the district court erred in admitting Dr. Benson's testimony. He contends that the government failed to comply with Federal Rule of Criminal Procedure 16(a)(1)(G). That rule requires the government to provide a defendant a written summary of any expert testimony that the government intends to use at trial, as well as the bases and reasons for the expert's opinions. Apparently overlooking the government's memorandum of February 5, Counts posits that the government did not disclose until the morning of trial on February 10 that Dr. Benson had reviewed M.D.'s forensic interview and a report of an FBI interview of Counts. He asserts that this allegedly late disclosure was prejudicial because he did not have time to prepare a cross-examination with knowledge that Dr. Benson had reviewed the case file. Thus, Counts argues, the district court should have excluded Dr. Benson's testimony in its entirety. *See* Fed. R. Crim. P. 16(d)(2)(C). We review the district court's admission of the testimony for abuse of discretion. *See United States v. Spotted Horse*, 914 F.3d 596, 600 (8th Cir. 2019).

Counts's argument fails because the government was not required to disclose that Dr. Benson had reviewed the case file. Rule 16(a)(1)(G) states in relevant part:

> At the defendant's request, the government must give to the defendant a written summary of any [expert] testimony that the government intends to use . . . during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Thus, the government must disclose to the defendant the "bases and reasons" only for "those opinions" that the government intends to elicit from the expert at trial. Rule 16 "does not require a recitation of every piece of information in the case that the expert reviewed." *Spotted Horse*, 914 F.3d at 601. Counts cites disclosure

requirements for civil cases, *see* Fed. R. Civ. P. 26(a)(2)(B), but they do not apply in a federal criminal case.

We conclude that the government provided Counts with all of the information to which he was entitled under Rule 16(a)(1)(G).  The government disclosed that Dr. Benson would testify about only the general characteristics of sex offenders, and would not opine about the behavior or characteristics of Counts himself.  Thus, the government was required to disclose only the "bases and reasons" for Dr. Benson's opinions about the general characteristics of sex offenders.  The prosecution complied with that requirement by citing Dr. Benson's training and twenty years of experience as a clinical psychologist.  The case-specific materials that Dr. Benson reviewed were not a "basis or reason" for her testimony regarding the general characteristics of sex offenders, so Rule 16 did not require the government to disclose that she had reviewed them.  The district court did not abuse its discretion in admitting Dr. Benson's testimony.

III.

Counts next contends that the district court violated his right "to be confronted with the witnesses against him" under the Sixth Amendment by admitting the video recording of M.D.'s forensic interview with Bonnie Fries.  M.D. testified on the second day of trial, and the government introduced the video recording on the third day during Fries's testimony.  Counts thus argues that he could not cross-examine M.D. about statements he made in the forensic interview, because M.D. had been excused before the video recording was admitted.  We consider this constitutional issue *de novo*.  *United States v. Brun*, 416 F.3d 703, 706 (8th Cir. 2005).

As construed in *Crawford v. Washington*, 541 U.S. 36 (2004), the Confrontation Clause generally bars the admission of testimonial statements of a witness who is absent from trial.  *Id.* at 53-54.  Statements made to a forensic

interviewer may be testimonial. *United States v. Charboneau*, 613 F.3d 860, 861 (8th Cir. 2010). But if the declarant testifies and is subject to cross-examination at trial, then the Confrontation Clause does not preclude the admission of the declarant's prior testimonial statements. *Crawford*, 541 U.S. at 59 n.9. Therefore, when a child witness testifies at trial, the only issue under the Confrontation Clause is "whether the trial provided an opportunity for effective cross-examination." *United States v. N.B.*, 59 F.3d 771, 775 (8th Cir. 1995) (internal quotation omitted).

M.D. is the declarant in the video recording. Defense counsel thoroughly cross-examined M.D., and even impeached him with a transcript of the forensic interview. Counts had the opportunity to cross-examine M.D. effectively, so the district court did not err by admitting the video recording of the forensic interview.

Counts nonetheless argues that he was "unable" to cross-examine M.D. about statements made in the interview, because M.D. was released from subpoena before the video recording was admitted. Counts has not established, however, that he could not recall M.D. as a witness after the recording was admitted if further cross-examination was important to the defense. Counts received advance notice that the government planned to present the recording, R. Doc. 51, 58, 92, yet the record shows no effort by the defense to keep M.D. under subpoena after he testified or to recall him for further testimony. The Confrontation Clause requires only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). Counts had such an opportunity at trial, and he did not seek an additional opportunity to cross-examine M.D. after the video recording was admitted. We thus conclude that the district court's admission of the video recording of M.D.'s forensic interview did not violate Counts's rights under the Confrontation Clause.

\* \* \*

The judgment of the district court is affirmed.

_____